**Phillip PALMER, Personal Representative of the Estate of William Palmer, Appellant,**

v.

**MISSOURI DIVISION OF FAMILY SERVICES, Respondent.**

**No. WD 42062.**

Missouri Court of Appeals, Western District.

May 1, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 1990.

Application to Transfer Denied Sept. 11, 1990.

Edward Berg, Columbia, for appellant.

Linda Ray–McKenna, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

KENNEDY, Judge.

The personal representative of decedent William Palmer appeals the decision of the Director of the Division of Family Services denying Mr. Palmer's application for medical assistance, section 208.151, RSMo Supp. 1987.

William Palmer was a resident of a nursing home at Columbia, Missouri, when he

applied for medical assistance in May, 1988. Palmer himself had less than $1,000, but his wife, Clara Pearl Palmer, who lived in Fulton, Missouri, had more than $10,000 in a bank account. The Director of the Division of Family Services, deemed Mrs. Palmer's $10,000 to be chargeable to Mr. Palmer, putting Mr. Palmer's resources above the $2,000 eligibility limit for a married couple living together, and denied medical assistance to Mr. Palmer.

Mr. Palmer and Mrs. Palmer had been married in 1981 and had lived together until he had entered the nursing home in May, 1986. After Mr. Palmer entered the nursing home, first at Hallsville and then in Columbia, Mrs. Palmer continued to live in her residence at Fulton, Missouri, a residence owned by Mrs. Palmer where, we take it, the couple had lived together before Mr. Palmer entered the nursing home. They continued to be married to each other until Mr. Palmer's death on December 24, 1988.

Mr. Palmer's own resources were depleted after two years in the nursing home and in May, 1988, he made the application for medical assistance which is before us now.

Section 208.151 prescribes the conditions of eligibility for medical assistance. Section 208.151.1(17), RSMo Supp.1987, makes eligible for medical assistance: "All persons who would be determined to be eligible for old age assistance benefits ... under the eligibility standards in effect December 31, 1973...."

According to section 208.010.2(3), RSMo Supp.1973, as it read on December 31, 1973, public assistance benefits were not payable to any person who: "(3) [o]wns or possesses cash or securities in the sum of one thousand dollars or more; provided, however, that if such person is *married and living with spouse*, he or they, individually or jointly, may own cash or securities not to exceed two thousand dollars...." (Emphasis added.)

If Mr. Palmer at the time of his application for medical assistance in May, 1988, was "married and living with spouse", within the meaning of section 208.010.2(3),

as it read December 31, 1973, then Mrs. Palmer's $10,000 bank account is "deemed" to Mr. Palmer, it placed their combined cash and securities above $2,000, and it made Mr. Palmer ineligible for medical assistance.

The Director held that Mr. Palmer was indeed married and living with Mrs. Palmer, and that Mrs. Palmer's $10,000 made Mr. Palmer ineligible for medical assistance. In determining that Mr. Palmer was "living with" Mrs. Palmer, the Director applied a definition of "living together" that was first adopted by the legislature in 1981, and which was not in the statute on December 31, 1973. That definition is found in section 208.010.1, RSMo Supp. 1989, and provides: " 'Living together' for the purpose of this chapter is defined as including a husband and wife separated for the purpose of obtaining medical care or nursing home care...." That definition is inapplicable to the case before us, since it was not in the statute December 31, 1973. Presumably this definition was enacted into law in response to *Garner v. Missouri Division of Family Services,* 591 S.W.2d 27 (Mo.App.1979), which had rejected a similar definition adopted by the Director.

A person who is a permanent resident of a nursing home, without a realistic purpose of returning to the same residence as his spouse, whose spouse resides in a separate residence, can scarcely be said to be "living with" his spouse. While neither case is controlling, we have two Missouri cases which are of some help in getting at the definition of the phrase "married and living with spouse" as used in section 208.010.-2(3), as of December 31, 1973.

One of the cases is *Lipp v. Lipp,* 117 S.W.2d 364 (Mo.App.1938), which considered the phrase "living together as husband and wife" in a divorce case, where the issue was wife's entitlement to suit money from husband. At the time of her filing her divorce petition she and her husband occupied separate rooms and separate "domiciles" within the same house. The court quoted with approval the following definition:

By the term 'living together as husband and wife' is meant the dwelling together in the same house, eating at the same table, the two parties, the man and woman in question, holding themselves out to the world and conducting themselves toward each other as husband and wife.

*Lipp,* 117 S.W.2d at 365.

A better case for our purposes is *Garner v. Missouri Division of Family Services,* 591 S.W.2d 27 (Mo.App.1979). There the statutory phrase "actually living with" was under consideration. The court was considering an interpretation of the Director which provided for excluding the resources of the welfare applicant's spouse only "[w]hen there has been estrangement, desertion or abandonment and the husband and wife are living apart for reasons other than health...." By necessary implication under the Director's definition the resources of the spouse of a permanent nursing home resident were chargeable to the nursing home resident who applied for supplementary nursing care benefits.

The court said the Director's narrow construction of the statute deprived the applicant of a fair hearing. Said the court:

To the extent that Director's regulations require a discontinuance of the marital relationship before property will be separately evaluated, such regulations are overly restrictive and unauthorized by statute. For the reason that applicant is a full time resident in a nursing home and does not "actually live with" her husband, Director erred by using the full value of jointly held property when he made his determination of ineligibility.

*Garner,* 591 S.W.2d at 29.

We go a bit further than our sister court of the Eastern District, which said the applying spouse who is a permanent resident of a nursing home does not "actually live with" his spouse who lives in another residence; we hold he does not "live with" her.[1]

---

1. Section 208.010 has been amended, effective September 30, 1989, to provide a new method and procedure for determining what of the resources of a non-institutionalized spouse may be

The decision of the Director is reversed. The case is remanded to the circuit court for remand to the Director of the Division of Family Services for reconsideration of the Palmer application in light of the foregoing opinion.

All concur.

---

charged to an institutionalized spouse in determining eligibility for medical assistance benefits. Section 208.010.5, RSMo Supp.1989.